No. 5509.

BOOKER SCOTT *v.* THE STATE.

MURDER.—See the statement of the case for circumstantial evidence *held* insufficient to support a conviction for murder.

APPEAL from the District Court of Houston. Tried below before the Hon. F. A. Williams.

The conviction was in the second degree for the double murder of Alsie Taylor and Lettie Smotherman, in Houston county, Texas, on the first day of September, 1879. A term of ten years in the penitentiary was the penalty assessed by the jury.

Frank Denman was the first witness for the State. He testified that he had been once convicted for hog theft, had served his term of imprisonment, and had been pardoned by the Governor in order to be qualified as a witness in this case. His pardon was then produced, and he testified, in substance, as follows: He, at the time of the murder, lived at Cicero Dupuy's place in Houston county, about two and a half miles from the place of the murder. The place of the murder was on the Centralia road. Alsie and Lettie were then living at John McCelvey's place, about half a mile from where their bodies were found. For some time prior to the murder, witness had meetings twice a week with Alsie and Lettie in a peach orchard near Dupuy's, and about two miles from McCelvey's, the purpose of which was carnal connection with Alsie. McCelvey, who had several children by Alsie, would not permit the witness to enter his house. On the fatal Sunday, the witness and his brother Henderson left Dupuy's to go to their mother's house, some miles distant. Witness stopped near McCelvey's to wait for his brother, who went into the house to get a pair of cuff buttons. An engagement had been previously made between Alsie and witness to meet on the road on that Sunday. After parting with his brother, the witness observed the approach of Alsie and Lettie. The former made a motion to witness directing his attention back up the road. Looking in that direction witness saw John McCelvey with a gun, and Powhattan Tolliver and

Booker Scott, the defendant, following the girls. Witness, fearing that McCelvey intended to shoot him, rode off. He had not gone far when he heard Alsie say: "Don't you hit me, you old gray headed son of a bitch," and cursing McCelvey. A very short time after that the witness heard screaming, and concluded that McCelvey was whipping Alsie. He was soon joined by his brother, and the two went on to their mother's house. Witness heard of the killing of Alsie and Lettie on that evening. Messrs. Jackson and Garrison passed witness on the road on that evening. It had been previously agreed between witness and Alsie that they would get married and go to Cherokee county together.

The cross examination of this witness was directed towards his movements on the day of the murder. It elicited repetitions in detail of his evidence in chief, showing that he stopped at McCelvey's blacksmith shop to wait for his brother, who went into McCelvey's house to get a pair of cuff buttons; that, after waiting for some time, he rode on for the distance of half a mile, when he stopped to wait for Alsie, and that he left that point when he discovered the approach of McCelvey, Tolliver and defendant. The witness, who was popular with women, thought that McCelvey was jealous of him. He had heard McCelvey say that he intended to beat Alsie for being too intimate with him, witness. When Alsie and Lettie aproached the witness on the road, on the fatal Sunday, they passed him in a slow walk, and Alsie said to him: "That old devil is following us."

Cherry Duvant, a sister of Alsie Taylor, testified that she was living at John McCelvey's at the time of the murder of Alsie and Lettie. When Alsie and Lettie left McCelvey's on the fatal Sunday evening, they said they were going to "Aunt" Martha Steed's. John McCelvey was then at home, but left shortly after the girls did. The defendant came to McCelvey's about thirty minutes after McCelvey left. He remained but a few minutes and left, walking rapidly toward his home. McCelvey came back shortly after defendant left. Witness saw no more of the girls alive after they started to Martha Steed's. The witness was twelve years old when the girls were killed. She never knew of any trouble between McCelvey, Booker or the girls. The bodies of the girls, when brought back to the house, showed that they had been killed by beating or stamping. Witness saw two men, after the girls left, traveling the road in the direction taken by the girls. Defendant lived about three miles from McCelvey's

and was the husband of Alsie's sister.   Witness never heard the defendant make a harsh remark about Alsie or Lettie.   McCelvey never said anything to witness about the killing of the girls, but apparently took the killing hard.   When he came back to the house on the fatal Sunday he asked if anybody had called in his absence, and if Alsie had come back.   Alsie was a negro woman.   Her children were claimed by McCelvey.

Cross examined, the witness said that the screaming down the road occurred about thirty minutes before sundown, and shortly after Alsie and Lettie had left to go to Martha Steed's.   If Charles McCelvey or Henderson Denman were at John McCelvey's on the fatal Sunday, witness did not see them.   The old blacksmith shop stood about two hundred yards from John McCelvey's house.   Defendant, apparently, was very much attached to Alsie.

Rose Denman, the sister of the defendant, was the next witness for the State.   She testified that, on the Tuesday before the Sunday of the murder, she helped Alsie with her washing. While thus engaged they were visited by the defendant, who then lived on the Pete Kennedy place, about two miles distant from the McCelvey place.   Defendant called Alsie to a point a few feet distant from witness, and asked her about a report that she was going to Cherokee county.   Alsie replied that she was going if she lived, and that she was going to marry the blackest man she could find.   Defendant tried to persuade her not to go, assuring her that she would find cause to regret her purpose of leaving McCelvey's.   Witness saw the defendant on the evening of the killing.   He was then near the old store, walking from the direction of McCelvey's house.   He began to play with witness, who repulsed him with the remark that she was not in the humor for play.   He said, "You are mighty touchy," and left. Witness smelled whisky on his breath.   The witness saw the girls before they were taken to McCelvey's house after they were hurt.   Lettie said that "Marse John [McCelvey] hurt her," and then Tolliver protested that the wounded girls should not be permitted to talk, as, being out of their heads, they would say something foolish.   McCelvey gave Lettie some medicine which he said was toddy, but which did not smell of liquor.   After Lettie took the medicine she grew worse and foamed at the mouth until she died.   Lettie died on Sunday night and Alsie on Monday morning.   Witness overheard a conversation between McCelvey and Tolliver in the yard on Sunday night.   McCelvey

said that "all he hated about the matter was that they got Lettie, who was innocent." Defendant was not at McCelvey's at that time, and witness heard nothing said about him. The women had been beaten over the head in a cruel and savage manner, and Alsie had been stamped on the stomach.

Cross examined, the witness said that if the defendant had anything to do with the murder of the two girls she did not know it. It was between two and three o'clock in the afternoon when the witness met him near the old store, about three miles from the place of the murder. Witness knew that Frank Denman and Alsie were well acquainted with each other, but she knew nothing of their meeting for criminal intercourse.

Ike Denman testified, for the State, in substance, that he saw defendant at Powhattan Tolliver's house at noon of the fatal Sunday. Defendant remained to dinner with Tolliver. Witness and White, after they had gone back to White's and eaten dinner, went down into White's field, and while in the field witness heard screaming. He thought at the time that the screaming proceeded from White's children. Witness saw the defendant again on that evening on the scene of the crime. The women were not yet dead, nor had they been moved. Lettie could talk when first found, but Alsie never recovered speech after she was injured. Witness never heard either defendant or Tolliver utter threats against Alsie or Lettie. He did not know the state of feeling between McCelvey and Alsie.

Ellen Barnes testified, for the State, that she saw and talked with defendant on the Friday before the tragedy. He said that Alsie had given him a "d—d" good cursing for "giving her and Frank Denman away to McCelvey," and that she, Alsie, would regret it before three days had passed. Witness did not see the defendant at the place of the killing, while she and others were there, which was before the women were removed to the house. Witness's husband was with her on Friday when defendant made the remark about Alsie cursing him. With regard to this fact, the witness was corroborated by her husband, Charles Barnes.

Sam Davenport testified, for the State, that he met defendant at McLemore's place, about one o'clock in the afternoon of the fatal day. Defendant came to McLemore's from the direction of McCelvey's place.

Henderson Denman, testifying for the State, corroborated his brother, Frank Denman, as to the movements of the two on the

fatal day, but testified to nothing else of importance bearing upon the tragedy.

The substance of the testimony of M. D. Steed, the next witness for the State, was that he saw the women shortly after they were injured. Near the place where he found them he saw the tracks of two horses and one man's track. The horse tracks followed the road from the direction of John McCelvey's towards Centralia. They separated a short distance from where the women were found, traveled different roads for a considerable distance, and came together again at the point where the witness abandoned the pursuit. The man's track was found only at one place, about eighteen feet from the bodies of the women. The impression of what the witness took to be the toe of a shoe was found near the horse's tracks. The man's track was made by about a number eight brogan shoe. The witness did not know the state of feeling between McCelvey and Alsie.

The State closed.

Silas Beal was the single witness for the defense. He testified that defendant came to his house about one o'clock on the day of the killing. When defendant left witness's house, later in the day, he went in the direction of his home, where, late in the evening, the witness saw him playing marbles.

It was in proof that the women were killed by contused wounds on their heads, apparently made with a blunt instrument.

*W. A. Stewart* and *S. A. Denny*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. This conviction is based solely upon circumstantial evidence, and the inculpatory circumstances tending to establish the defendant's guilt of the murders are of an unsatisfactory and inconclusive character. We shall not consume time in reciting the facts proved, as the Reporters will publish them.

After a thorough consideration of the evidence as it is before us, we must say that the conviction is not warranted thereby, and the court erred in refusing to grant defendant a new trial upon the ground that the evidence did not support the verdict.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*